1
2
3
4                    UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7    DANIEL MENDOZA RIVAS,                Case No. 24-cv-00007-JST
                     Plaintiff,
8
9            v.                           ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANTS'
10   CRAIG KOENIG, et al.,                MOTION TO DISMISS
                     Defendants.          Re: ECF No. 15
11
12
13          Plaintiff Daniel Mendoza Rivas, an inmate housed at Folsom State Prison, has filed this

14   *pro se* civil rights action regarding events that took place at Correctional Training Facility ("CTF")

15   in Soledad, California.  Now pending before the Court is Defendants' motion to dismiss the

16   complaint.  ECF No. 15.  Plaintiff has filed an opposition, ECF No. 16, and Defendants have filed

17   a reply in support of their motion, ECF No. 17.  For the reasons set forth below, the Court

18   GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.  ECF No. 15.

19                                  **DISCUSSION**

20   **I.    Complaint**

21          The complaint names as defendants Craig Koenig, identified as CTF warden from 2020-

22   2021; and L. Martinez, identified as CTF warden from 2021 to present.  The complaint alleges

23   that, despite knowing the dangers posed by COVID-19, Defendants failed to enforce COVID-19

24   safety protocols, such as masking and maintaining a six foot distance, from 2020-2022.  The

25   failure to enforce the COVID-19 protocols resulted in the following:  in 2020, Plaintiff and 2,700

26   other inmates contracted COVID, and 21 inmates died from COVID; in late December 2020,

27   Plaintiff tested positive for COVID-19; Plaintiff suffers from numerous health complications

28   caused by COVID, including asthma; and in January 2022, there was a COVID outbreak among

CTF staff due to staff failure to wear masks, which resulted in 200 inmates contracting COVID. The complaint requests the following relief: immediate release from prison so that Plaintiff can receive professional mental help; medical examination for COVID-related health issues; and whatever the Court deems appropriate to pay mental and medical expenses. *See generally* ECF No. 1. Plaintiff attached to his complaint photos of staff and inmates unmasked in late 2020 and in January 2022, and a March 19, 2021 video of then-warden Koenig stating that COVID was brought into the prison by staff. ECF No. 1, Exs. B, I. The Court found that, liberally construed, the complaint's allegations stated a cognizable Eighth Amendment claim against Defendants. ECF No. 9.

The complaint has Grievance No. 69229 attached as an exhibit. Plaintiff submitted Grievance No. 69229 on December 20, 2020, and identified the issue as follows:

> Due to the severe corona virus (COVID 19) outbreak and the fact that the CTF staff has failed to manage the outbreak effectively within the prison, I'm concern for my safety. As is I'm CCCM'S I have mental health problems and seeing other inmates sufer (sic) from the decease (sic) including some death's (sic) in this month in A yard has cause me some stress, and seeing my own celly today came out positive I'm afraid to have the virus COVID 19. I have less than 6 years to go home but I'm afraid to get sick or even die and not be able to make it home.
>
> I have me, and my celly witnessed way to (sic) many irregularities within the institution failing to contain the virus.

ECF No. 1-1 at 35-36. Plaintiff requested that he be immediately released "because if something does happen to me due to staff not following guidelines within the institution my family and/or I will take legal actions against the CDCR institution." *Id.* In the January 7, 2021 first-level decision, the CDCR staff summarized the grievance as follows: "Claimant is seeking immediate release from incarcerated custody due to COVID-19. Alleges CTF staff failed to manage the outbreak of COVID-19 effectively." ECF No. 1-1 at 38. The response stated that CDCR took action to help mitigate the spread of COVID-19, including paroling inmates in order to increase both capacity and physical space at the prisons, which allowed for increased physical distancing and assisted isolation quarantine efforts for suspected or positive COVID-19 cases. ECF No. 1-1 at 38. ECF N0 . 1 at 5. Plaintiff appealed the first level decision, stating that public records

1   contradicted the claim that the CDCR took steps to mitigate the spread of COVID-19, with records

2   showing that more than 300 CTF staff members contracted COVID, more than 2500 inmates

3   contracted COVID; and 6 inmates died of COVID.  ECF No. 1-1 at 39.

4   **II.    Motion to Dismiss**

5        Defendants alleges that this action should be dismissed for the following reasons: (1)

6   Plaintiff has failed to exhaust his administrative remedies for this claim, and the failure to exhaust

7   is clear on the face of the complaint; (2) Plaintiff cannot raise a claim based on supervisory

8   liability; and (3) Defendants are entitled to qualified immunity because there is no legal authority

9   clearly establishing that a prison warden violates the Eighth Amendment simply because, during a

10  once-in-a-century pandemic, one of his many staff members came to work while infected.  *See*

11  *generally* ECF No. 15.  Below, the Court addresses each argument in turn.

12       **A.    Legal Standard for Motion to Dismiss**

13       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's

14  complaint.  *See City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020).  Under the "notice

15  pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a

16  short and plain statement of the plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P.

17  8(a)(2); *see also Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013).  A court may dismiss a

18  complaint for lack of cognizable legal theory or if the facts alleged fail to suffice under a

19  cognizable legal claim.  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017).  However,

20  a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief

21  that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

22       In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations

23  and  construes them in the light most favorable to the plaintiff.  *Polanco v. Diaz*, 76 F.4th 918, 925

24  (9th Cir. 2023).  Notwithstanding this deference, the reviewing court "need not accept as true

25  allegations that contradict matters properly subject to judicial notice or by exhibit," *Produce Pay,*

26  *Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022), and need not accept as true

27  legal conclusions cast in the form of factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678

28  (2009).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual

United States District Court
Northern District of California

3

content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted). "*Pro se* complaints must be held to less stringent standards than formal pleadings drafted by lawyers, especially when they are civil rights claims by inmates." *Tiedemann v. von Blanckensee*, 72 F.4tg 1001, 1007 (9th Cir. 2023). In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).

### B.    Failure to Exhaust Administrative Remedies

#### 1.    CDCR Administrative Grievance Process

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to administratively grieve and appeal any "policy, decision, action, condition, or omission by the [California Department of Corrections and Rehabilitation]or departmental staff that causes some measurable harm to their health, safety, or welfare." 15 Cal. Code Regs. § 3481(a) (eff. June 1, 2020).[1]  For non-healthcare grievances by inmates,[2] there are two levels of review. At the first level, the inmate submits his claim on a CDCR Form 602-1 to the Institutional Office of Grievances at the prison where he is housed. 15 Cal. Code Regs. § 3482(a)(1), (c). In the Form 602-1, the inmate is required to "describe all information known and available to the [inmate] regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the [inmate's] knowledge." *Id.* at § 3482(c)(2). "In response, [the inmate] shall receive a written decision" from the Institutional Office of Grievances "clearly explaining the reasoning for the Reviewing Authority's decision as to each claim." *Id.* at

---

[1] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with the renumbered and amended provisions at sections 3480 through 3487.
[2] The Court does not discuss the healthcare grievance process as Plaintiff does not allege that he exhausted his administrative remedies by filing a healthcare grievance.

United States District Court
Northern District of California

§ 3481(a). This written decision, referred to as a first level decision, does not exhaust administrative remedies. *Id.* at § 3483(l). If an inmate is dissatisfied with the first level decision, the inmate may appeal the decision to the second level by submitting a CDCR Form 602-2 to the CDCR's Office of Appeals in Sacramento within 30 days of receiving the first level decision. *Id.* at §§ 3481(a), 3485(a). The Office of Appeals shall ensure that a written decision is completed no later than 60 calendar days after receipt of the grievance. *Id.* at § 3485(g). The written decision shall clearly explain the reasoning for the decision in each claim. *Id.* at § 3481(a). A written decision containing one of the following decisions—"denied," "granted," "no jurisdiction," "identified as staff misconduct," "pending legal matter," or "time expired"—constitutes exhaustion of the administrative remedy process. *Id.* at § 3485(l). "Time Expired" means that the Office of Appeals was not able to respond to the grievance within 60 calendar days, resulting in the first level decision serving as the department's final decision. *Id.* at § 3485(g)(10).

### 2.      Legal Standard

The Prison Litigation Reform Act sets forth the following exhaustion requirement: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), and requires "proper exhaustion" of available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 at 90–91. Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones*, 549 U.S. at 218. However, if an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. *Reyes v. Smith*, 810 F.3d 654, 656-58 (9th Cir. 2016) (California inmate whose grievance failed to name all staff members involved in his case, as required by former 15 Cal. Code Regs. § 3084.2(a)(3) nevertheless

1    exhausted claim of deliberate indifference to serious medical needs because claim was decided on

2    merits at all levels of review).

3        Because a challenge to a prisoner complaint based on the failure to exhaust administrative

4    remedies typically requires recourse to documents and evidence outside the pleadings, the proper

5    vehicle for raising a failure to exhaust defense is generally a motion for summary judgment, not a

6    Rule 12(b) motion to dismiss.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).

7    However, the "[i]n the rare event that a failure to exhaust is clear on the face of the complaint, a

8    defendant may move for dismissal under Rule 12(b)(6)."  *Id.*

9                    **3.    Analysis**

10       Defendants argue that Plaintiff has failed to exhaust his administrative remedies for the

11   claims raised in this action, and that the failure to exhaust is clear on the face of the complaint.

12   Specifically, Defendants argue that Grievance No. 69229 does not exhaust any claim against

13   defendants Koenig and Martinez because it does not identify either of them by name or title, and

14   does not describe their involvement in any violation of Plaintiff's rights.  Defendants further argue

15   that because Grievance No. 69229 was submitted in December 2020, this grievance could not

16   grieve defendant Martinez's conduct as warden as defendant Martinez did not become warden

17   until 2021.  ECF No. 15 at 4-5.

18       Plaintiff argues that Grievance No. 69229 exhausted the claims in this action because it

19   "addressed the core issue of staff failure to manage the COVID-19 outbreak, which falls under the

20   responsibility of the warden and chief deputy warden" and "clearly detail[ed] the negligence in

21   managing the outbreak and highlight the conditions that placed [Plaintiff] and other inmates at

22   risk."  ECF No. 16 at 3-4.  In the alternative, Plaintiff argues that seeking administrative remedies

23   would have been futile given the video evidence wherein the warden admitted responsibility for

24   the relevant events.  He argues that because the purpose of the administrative exhaustion

25   requirement is to give the institution a chance to address the issue, there is no need to pursue

26   administrative remedies where the warden has acknowledged fault because grievances would not

27   result in a different outcome.  Plaintiff further argues that his August 26, 2020 letter to defendant

28   Koenig "explicitly detail[ed] his concerns about the staff's negligence in handling the COVID-19

United States District Court
Northern District of California

1  outbreak" and "demonstrates that [Plaintiff] made a concerted effort to address the issue internally,

2  seeking resolution through proper administrative channels."  ECF No. 16 at 4.

3       Viewing the complaint and its attachments in the light most favorable to Plaintiff, the

4  Court finds that Plaintiff has failed to exhaust his claims against defendant Martinez and his

5  claims regarding actions subsequent to December 20, 2020, but that he has exhausted the

6  remaining claims, i.e., the claims against defendant Koenig arising out of his management, or

7  mismanagement, of CTF's response to the COVID outbreak prior to December 20, 2020.

8       Because Grievance No. 69229 was filed on December 20, 2020, it cannot exhaust claims

9  for actions subsequent to December 20, 2020.  Assuming that Grievance No. 69229 was decided

10  on the merits at all levels,[3] the prison's responses to Grievance No. 69229, at most, addressed the

11  prison's handling of COVID in 2020.  The prison's responses to Grievance No. 69299 did not

12  address events in 2021 or 2022, and did not address prison policy or management while defendant

13  Martinez was warden.  The claims arising out of any failure to enforce COVID safety policies

14  subsequent to December 20, 2020, and arising out of the January 2022 COVID outbreak are

15  therefore unexhausted.  The claims against defendant Martinez are similarly unexhausted because

16  there is no allegation that defendant Martinez was responsible for setting or enforcing CTF

17  policies, or for training subordinates, prior to becoming CTF warden sometime in 2021.  The

18  Court DISMISSES defendant Martinez and the claims regarding actions subsequent to December

19  20, 2020 for failure to exhaust administrative remedies.  The dismissal is without prejudice to

20  filing a new action raising these claims after Plaintiff has satisfied the PLRA's exhaustion

21  requirement with respect to these claims.

22       However, Grievance No. 69229 exhausts the claims regarding defendant Koenig's

23  management of the COVID-19 outbreak prior to December 20, 2020.  Although Grievance No.

24

25  _____

26  [3] The exhaustion requirement requires CDCR inmates to receive a decision from the Office of
   Appeals of "denied," granted", "no jurisdiction," "identified as staff misconduct," "pending legal
   matter," or "time expired" with respect to their grievance. 15 Cal. Code Regs. § 3945(l).  It is
27  unclear if the Office of Appeals issued a decision on Grievance No. 69229.  The complaint's
   exhibits only show a first level decision.  But Defendants do not argue that Grievance No. 69229
28  is unexhausted.  Because the defendant must plead and prove failure to exhaust, the Court
   presumes that Grievance No. 69929 is exhausted.

United States District Court
Northern District of California

1   69229 did not identify defendant Koenig at all levels, Grievance No. 69229 grieved CTF's

2   handling of the COVID-19 outbreak prior to December 20, 2020, and was decided on the merits at

3   all levels despite failing to name defendant Koenig.  The requirement that a grievance name all

4   staff members involved is a procedural rule.  If prison officials accept and render a decision on the

5   merits of a procedurally flawed grievance at each available step of the administrative process, then

6   the PLRA's administrative exhaustion requirement is satisfied.  *See Reyes*, 810 F.3d at 657-58

7   ("But when prison officials address the merits of a prisoner's grievance instead of enforcing a

8   procedural bar, the state's interests in administrative exhaustion have been served.").  Moreover,

9   here, as in *Reyes*, the grievance put prison officials on notice of the nature of the wrong alleged in

10  this action – that prison officials generally, including defendant Koenig, had failed to properly

11  manage CTF's response to COVID-19.  Defendant Koenig was warden during the time period

12  referenced, and the grievance therefore is reasonably read as grieving how defendant Koenig

13  handled COVID-19.  *See, e.g., Reyes*, 810 F.3d at 659 (claim against two specific doctors was

14  exhausted despite failure to name them in grievance because grievance grieved denial of pain

15  medication and doctors were members of committee that denied medication).

16      **C.      Supervisory Liability**

17          Defendants argue that Plaintiff's claims must be dismissed because they rely on a theory of

18  supervisory liability, for which Section 1983 relief is unavailable.  Specifically, Defendants argue

19  that the complaint has only pled supervisory liability because it does not plead any particular acts

20  or omissions by Defendants that increased the risk to inmate health and safety, and because the

21  complaint only pleads that staff did not follow protocol and that the wardens did a poor job

22  controlling staff.  Defendants are correct that, generally speaking, there is no supervisory liability

23  under § 1983, i.e., liability simply because the defendant supervises the wrongdoer.  *See Taylor v.*

24  *List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  But a supervisor is liable under Section 1983 for the

25  "constitutional violations of his subordinates if the supervisor . . . knew of the violations and failed

26  to act to prevent them," *Taylor*, 880 F.2d at 1045, or if the alleged constitutional violation was the

27  result of the supervisor's "own culpable action or inaction in the training, supervision, or control

28  of his subordinates," *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011).  The complaint alleges

United States District Court
Northern District of California

that defendant Koenig was aware that the COVID-19 protocols, such as masking, quarantining, and social distancing, were necessary to prevent the spread of COVID-19; that his staff regularly failed to comply with these protocols; and that COVID-19 posed a serious risk to inmate's health and safety.  Liberally construed, this allegation states a claim for Section 1983 liability against defendant Koenig.  The Court therefore DENIES Defendants' motion to dismiss the complaint on the grounds that the complaint has only pled supervisory liability.

### D.    Qualified Immunity

Defendants argue that qualified immunity bars Plaintiff's claims because "there exist[s] no legal authority clearly establishing that a prison warden violates the Eighth Amendment simply because, during a once-in-a-century pandemic, one of his many staff members came to work while infected."  ECF No. 15 at 6-7.  The Court DENIES Defendants' motion to dismiss on the grounds of qualified immunity because Defendants have defined the relevant right too narrowly.  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To be entitled to qualified immunity at the motion to dismiss stage, an officer must show that the allegations in the complaint do not make out a violation of a constitutional right or that any such right was not clearly established at the time of the alleged misconduct.  *See Pearson*, 555 U.S. at 232-36.  Determining whether the law was clearly established must be undertaken in light of the specific context of the case and not as a broad general proposition, but binding caselaw "need not catalogue every way in which prison conditions can be constitutionally inadequate . . . to conclude that a reasonable official would understand that his actions violated an inmate's rights."  *Hampton v. Calif.*, 83 F.4th 754, 769 (9th Cir. 2023) (internal quotation marks and citation omitted).  Recently, in 2023, the Ninth Circuit held that prison officials were not entitled to qualified immunity at the motion to dismiss stage with respect to a similar COVID-19 related claim.  In *Hampton*, a inmate's spouse alleged that the CDCR had violated the Eighth Amendment when, in 2020, they transferred inmates from California Institute for Men into San Quentin State Prison in a manner that resulted in infecting over 2,000 inmates with COVID-19, and causing the death of over 25 inmates and one prison

9

guard. *See generally Hampton*.  The Ninth Circuit found that the CDCR was not entitled to qualified immunity because, in 2020, it was clearly established that the Eighth Amendment requires correctional officials to reasonably protect inmates from exposure to serious diseases.  *Id.* at 754, 770.  Similarly, qualified immunity is not appropriate here at the motion to dismiss stage. The complaint alleges that defendant Koenig failed to act reasonably by ensuring compliance with the prison's own COVID-19 protocols, and therefore exposed Plaintiff to a serious communicable disease.  The Court therefore DENIES the motion to dismiss this action on the grounds of qualified immunity.

## CONCLUSION

For the reasons set forth below, the Court ORDERS as follows.

1.      The Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.  The Court DISMISSES the claims against defendant Martinez and the Eighth Amendment claims regarding Defendants' actions subsequent to December 20, 2020 for failure to exhaust administrative remedies.  The Court DENIES the remainder of the motion to dismiss.

2.      The Court sets the following briefing schedule.  No later than 91 days from the date this order is filed, Defendant must file and serve a motion for summary judgment or other dispositive motion.  If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion is due.  Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon Defendant no later than 28 days from the date the motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.  Defendant shall file a reply brief no later than 14 days after the date the opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion.

A motion for summary judgment also must be accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for

summary judgment).  Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).  (The *Rand* notice above does not excuse Defendant's obligation to serve said notice again concurrently with a motion for summary judgment.  *Woods*, 684 F.3d at 939).

This order terminates ECF No. 15.

**IT IS SO ORDERED.**

Dated: November 25, 2024

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

11