UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MENDOZA RIVAS, | Case No. 24-cv-00007-JST |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY MOTION** |
| CRAIG KOENIG, | Re: ECF No. 30 |
| Defendant. | |

Plaintiff Daniel Mendoza Rivas has filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that in 2020 former Correctional Training Facility ("CTF") warden Craig Koenig's failure to enforce COVID protocols constituted deliberate indifference to Plaintiff's safety and serious medical needs, in violation of the Eighth Amendment. *See generally* ECF No. 1. Now pending before the Court is defendant Koenig's motion for summary judgment. ECF No. 30. Plaintiff has filed an opposition, ECF No. 35; and defendant Koenig has filed a reply, ECF No. 36. For the reasons set forth below, the Court GRANTS defendant Koenig's motion for summary judgment.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated.

During the relevant time period, Plaintiff was housed at Correctional Training Facility ("CTF"), and defendant Koenig was warden of CTF.

### I.    COVID Protocols Generally

In early 2020, in respond to the COVID-19 outbreak, the California Department of Corrections and Rehabilitations ("CDCR") imposed certain safety protocols. These protocols included requiring correctional staff and inmates to wear masks, and requiring them to maintain a six-foot distance. Defendant Koenig imposed additional measures within CTF to limit the spread

United States District Court
Northern District of California

of COVID, including sanitization of surface, and isolating or quarantining infected inmates. When an inmate tested positive for COVID-19, the procedure was to move the inmate to an isolation unit immediately, or as soon as possible. Defendant Koenig was not directly involved in the movement of any inmate from one cell to another. ECF No. 30-3.

Plaintiff does not dispute that the CDCR and CTF announced the above COVID safety protocols. He disputes defendant Koenig's claim that CTF staff followed these protocols. In particular, Plaintiff states that CTF staff failed to mask:

> [CDCR and the State of California] were announcing all the protocols for every single prison. They want everybody lockdown, following protocols to avoid COVID-19.
> So they did it to every – to all the inmates. We did got no visits, no groups. We don't have nothing. We didn't have no contact – physical contact with nobody from the streets.
> But the COs, the officers and the staff, they were the only people – people that came from the streets, but they were not following the protocols. And I got a little bit angry when I see that we got no visits because they don't want to us get infected, but the officers, they came to work with no mask. They all happy together. They are coughing. And they have all inmates around them. They have us wearing the mask but they not wearing the mask. I say, like, That's not right.

ECF No. 30-2 at 34. Plaintiff has filed with the Court 17 photos that he alleges prove that staff failed to wear masks. ECF No. 2.[1] Of these 17 photos, 14 of these photos show staff from a distance, either with their mask under their nose or chin, or without a mask at all. The photos are unclear and some of these photos appear to be photographs of the same scene from different angles or at a slightly later point in time. In some of these photos, the unmasked correctional officer or officers are in close proximity to inmates who are also unmasked. The remaining three photos appear to be photos of just prison inmates, with one photo showing inmates doing laundry. No correctional officers are visible in these three photos. ECF No. 2.

**II.    Defendant Koenig**

*Staff Discipline*. Defendant Koenig states that when he learned of staff noncompliance

---

[1] Plaintiff filed 19 photos with the Court, but two of the photos are not photos of correctional officers or inmates. One photo is a screenshot of the website cdcr.ca.gov on a mobile phone browser, open to the screen reporting that on June 1, 2020, the CDCR and CCHCS required correctional officers to use "facial barriers" and stating that there would be progressive disciplinary action for staff who failed to comply. The other photo appears to be a picture of a screen in the prison showing a May 13, 2020 update reminding inmates to maintain social distancing, wear a mask at all times, disinfect immediate area and all touch points, and to inform staff if feeling ill. ECF No. 2, IMG_3427 and IMG_5546.

with COVID protocols or other prison procedures, he applied progressive discipline.  ECF No. 30-3.  Plaintiff disputes this claim, stating that there is no evidence supporting defendant Koenig's statement and that that he did not see any staff fired or sent home due to noncompliance.  ECF No. 35 at 16; ECF No. 30-2 at 36.

*Defendant Koenig's interaction with CTF staff and inmates*.  Defendant Koenig states that he toured CTF daily with medical personnel and yard supervisors to ensure compliance with safety protocols; spoke regularly with staff and inmates to explain the risks of COVID-19; and fielded concerns during his tours of the facility almost daily in 2020.  ECF No. 30-3 at 2-3.  Plaintiff disputes this statement, stating that defendant Koenig only walked the yard "once in a while" and that defendant Koenig "don't know anything what happened in the yard."  ECF No. 30-2 at 38.

*Plaintiff's communications with defendant Koenig*.  On August 28, 2020, Plaintiff wrote to defendant Koenig and informed him that correctional staff were not complying with COVID-19 staff protocols, in particular masking and social distancing.  ECF No. 30-2 at 23-24.  Plaintiff did not receive any response to these letters, so on September 21, 2020, he sent defendant Koenig a letter via legal mail to ensure defendant Koenig's receipt of the letter.  ECF No. 1 at 4; ECF No. 1-1 at 28.  Defendant Koenig does not recall receiving letters from Plaintiff.  ECF No. 30-3 at 3.  Defendant Koenig states that, in his capacity as warden, he received voluminous correspondence.  ECF No. 30-3 at 3.  Plaintiff states that the legal mail log shows that his letter was sent out.  Dt. No. 35 at 82.  Plaintiff also states that he tried to talk to defendant Koenig on the yard, but defendant Koenig did not want to talk to him.  ECF No. 35 at 16.

**III.    November 2020 to February 2021**

By November 2020, CTF inmates had contracted COVID-19, with some inmates dying from COVID-19.  Plaintiff was tested for COVID-19 on October 15, November 22 and 29, and December 3 and 8.  Each time, Plaintiff tested negative.

On or about December 14, 2020, Plaintiff and his cellmate, inmate Maldonado, were informed by staff that they would be moved to Whitney B Yard Cell 21 to prevent them from contracting COVID.  However, the inmates who had been previously housed in Cell 213 had

United States District Court
Northern District of California

3

tested positive for COVID-19.  ECF No. 1 at 4.

On December 17, 2020, medical staff tested Plaintiff and inmate Maldonado for COVID-19.  Plaintiff informed medical staff that he had symptoms consistent with COVID-19 – runny nose, cough, loss of smell, diarrhea, and loss of appetite.  ECF No. 1 at 4-5; ECF No. 30-2 at 15-16.  The nurse administering Plaintiff's COVID-19 test administered the test incorrectly by failing to push the swab far enough into Plaintiff's nostril.  Plaintiff informed the nurse that she had not performed the test correctly and asked for the COVID test to be repeated.  The nurse responded, "I know how to do my job," and refused to administer another COVID test.  Dkt. No. 30-2 at 16-19.  Plaintiff's COVID test came back negative.

On December 20, 2020, inmate Maldonado learned that he was COVID-positive.  Dkt. No. 30-2 at 16-18.  Around 8:00 a.m., inmate Maldonado was ordered to move to an isolation cell but he was not moved until 2:00 p.m. that day.  Dkt. No. 30-2 at 19.  That same day, Plaintiff was informed that he had tested negative for COVID-19.  Prison medical staff did not test Plaintiff again for COVID until December 24, 2020.  Plaintiff was tested again for COVID on December 28, 2020, and on December 30, 2020.  Both tests were negative.  Dkt. No. 30-2 at 18-20, 43.

In February 2021, Plaintiff received the COVID vaccine.  Dkt. No. 30-2 at 22; Dkt. No. 30-5 at 86.  Currently, Plaintiff has trouble breathing through his throat, which he attributes to long COVID.  The CTF doctor diagnosed Plaintiff with asthma, but the Folsom State Prison doctor has stated that Plaintiff does not have asthma.  Dkt. No. 30-2 at 47-50.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing

United States District Court
Northern District of California

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor.  *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020).  If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact.  *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence.  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

**II.      Legal Standard for Eighth Amendment Deliberate Indifference to Safety Claim**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of convicted prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  When a convicted prisoner alleges that prison officials have failed to protect him from dangerous conditions of confinement, the proper inquiry is whether (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety.  *Id*. at 832.  Neither negligence nor gross negligence will constitute deliberate

5

indifference. *Id.* at 835-36 & n.4. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *See id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.*

### III.    Analysis

Defendant Koenig argues that he is entitled to summary judgment because Plaintiff cannot establish that defendant Koenig's actions caused Plaintiff to contract COVID, and because defendant Koenig responded reasonably to Plaintiff's risk of contracting COVID. *See generally* Dkt. No. 30. Defendant Koenig makes the following specific arguments. To the extent that Plaintiff argues that he contracted COVID from the failure to immediately separate him from his cellmate after his cellmate tested positive for COVID, defendant Koenig was not directly involved in any decisions regarding inmate cell assignments after testing positive, defendant Koenig had no involvement in the decision to retain Plaintiff in the same cell as his cellmate for six hours, and defendant Koenig was unaware of any delays related to Plaintiff's cell assignment. Plaintiff was not harmed by defendant Koenig's action as he did not contract COVID, as indicated by the fact that Plaintiff never tested positive for COVID. Plaintiff's assertion that he had COVID and that the December 17, 2020 test was improperly administered does not create a triable issue of fact as to whether Plaintiff contracted COVID as Plaintiff is not a doctor, Plaintiff is not qualified to render a medical opinion, and Plaintiff again tested negative the following week. Finally, defendant Koenig responded reasonably to the risk of COVID-19 by implementing safety protocols, including the weekly COVID testing of Plaintiff and other inmates and quarantining Plaintiff subsequent to Plaintiff's cellmate testing positive. Defendant Koenig disciplined staff when he learned of failures to comply with safety protocol, and Plaintiff cannot know that staff were never disciplined. To the extent that staff failed to comply and were not punished, it was because defendant Koenig either did not know of the failure to comply because could not monitor all staff at all times; and because it did not make sense for defendant Koenig to mete out discipline

United States District Court
Northern District of California

6

any time an inmate reported staff misconduct.  Defendant Koenig's statement that COVID-19 must have entered the facility via prison staff was not an admission that prison staff had disobeyed safety protocols or that he had endorsed or excused prison staff's failure to comply.  Rather, that statement was made in the context of keeping inmates and staff informed of the status of efforts to contain COVID.  *See generally* Dkt. No. 30.

Plaintiff makes the following arguments in opposition to Defendant's summary judgment motion.  Correctional staff did not mask as required by the COVID safety protocols.  Plaintiff personally witnessed the failure to mask and has provided pictures of unmasked correctional officials.  Defendant Koenig did not discipline staff that failed to mask as Plaintiff did not witness any staff fired or sent home for noncompliance.  Plaintiff tried to inform defendant Koenig about correctional officials failing to mask by sending defendant Koenig a letter in August 2020.  The legal mail log shows that the letter was sent out.  Defendant Koenig is lying about not receiving Plaintiff's letters.  Plaintiff also tried to inform defendant Koenig about correctional officials failing to mask by trying to talk to defendant Koenig on the yard, but defendant Koenig refused to speak to Plaintiff when Plaintiff approached him on the yard.  As a result of correctional officers' failure to mask, Plaintiff contracted COVID in December 2020.  Plaintiff had all the symptoms of COVID and the reason he tested negative was because the test was incorrectly administered.  Given that Plaintiff's cellmate had tested positive, correctional staff should have re-tested Plaintiff the same day and moved him out of the infected cell, but they did not take these steps to protect Plaintiff.   Even if Plaintiff did not contract COVID, defendant Koenig violated the Eighth Amendment "just by not enforcing basic protocols and exposing inmates to COVID-19" and because defendant Koenig is responsible for operations and oversight of the prison.  Because defendant Koenig is in charge of the person, he should have taken the time to listen to inmates' reports that staff were not following protocol and should have investigated these reports.  Defendant Koenig has admitted his culpability for the spread of COVID among CTF inmates when he stated in a televised interview: "And honestly, the only way they could identify the spread of COVID-19 was through the staff.  And of course there is nothing I could have done about it.  The staff have to do rounds and they have to do what they have to do."  This statement is

an admission by defendant that COVID was introduced to CTF's inmate population by correctional staff; and that defendant Koenig did not do anything about this spread.  Plaintiff's current breathing issues are clearly the result of long COVID.  *See generally* Dkt. No. 35.

The Court GRANTS summary judgment in favor of defendant Koenig for the following reasons.

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated a triable issue of material fact as to (1) whether defendant Koenig knew of, and disregarded, staff going unmasked; or as to (2) whether defendant Koenig failed to take reasonable steps to abate excessive risk to inmate health or safety posed by staff going unmasked.  Viewing the record in the light most favorable to Plaintiff, the Court presumes that the photos provided by Plaintiff indicate that Plaintiff and other inmates frequently observed staff masking incorrectly or going unmasked.  However, Plaintiff does not allege, and nothing in the record indicates, that defendant Koenig observed staff failing to comply with masking protocols on a regular basis, or that defendant Koenig was aware of staff failing to comply with masking protocols when he was not present, or that defendant Koenig did not discipline staff when he learned that they were not complying with masking protocol.  In fact, in his August 2020 letter, Plaintiff appears to state that he wishes to inform defendant Koenig of issues that defendant Koenig would otherwise be unaware of:  "I have been trying to contact you by letters to discuss some irregularities that are occurring here in A yard by the staffs about not following any of the COVID 19 protocols, looks like they want to infect the inmates intentionaly (sic) by the way they are acting . . . please allow me the opportunity to talk to you one on one, just call me to the patio or something, but we need to do something."  ECF No. 35 at 81.  Plaintiff seeks to hold defendant Koenig responsible for staff non-compliance with masking protocol based on a theory of supervisory liability.  Plaintiff argues defendant Koenig is responsible for the spread of COVID-19 caused by staff failure to mask because defendant Koenig is "responsible for operations and oversight of the prison" and is "responsible for making sure all staff complied with the institutions COVID 19 protocols and taking action against anyone who didn't follow them."  Dkt. No. 35 at 2-3.  But there is no supervisory liability under Section 1983.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

United States District Court
Northern District of California

8

(no respondent superior liability, or supervisory liability, under Section 1983, i.e., no liability under theory that one is liable simply because he supervises person who has violated plaintiff's right).  In other words, assuming arguendo that staff members failing to mask violated the Eighth Amendment, defendant Koenig is not liable for these staff members' unconstitutional actions solely because he is their supervisor or has overall responsibility for CTF.  Rather, in order to show that defendant Koenig violated the Eighth Amendment, Plaintiff must show that defendant Koenig knew that staff members were not complying with masking protocol, that he knew that the non-compliance was to such an extent that it exposed Plaintiff to a substantial risk of serious harm, and that he failed to take reasonable steps to address the non-compliance.  *Farmer*, 511 U.S. at 837.  Plaintiff has not proffered any evidence indicating that defendant Koenig was aware that correctional officers were regularly going unmasked or that when defendant Koenig learned of correctional officers going unmasked, he failed to address it.  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  *See Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002); *see also Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015) (defendant's liability must be based on actual awareness of the risk rather than constructive knowledge).

For the same reasons, the Court also finds that Plaintiff has not demonstrated a triable issue of material fact as to whether defendant Koenig violated the Eighth Amendment when prison officials failed to promptly separate Plaintiff and his cellmate after his cellmate tested positive for COVID.  Plaintiff has not alleged, and there is no evidence in the record, that defendant Koenig was involved in decisions regarding inmate cell assignments upon an inmate testing positive or that defendant Koenig was aware that inmate Maldonado had tested positive and that Plaintiff was not separated from inmate Maldonado for six hours after the positive test result.

IV.    **Qualified Immunity**

Qualified immunity is an entitlement, provided to government officials in the exercise of their duties, not to stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  To determine whether an officer is entitled to qualified immunity, the Court must consider whether (1) the officer's conduct violated a constitutional right, and (2) that right was

9

clearly established at the time of the incident.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Courts are not required to address the two qualified immunity issues in any particular order, and instead may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.  Because there was no violation of Plaintiff's constitutional rights, as explained above, there is no necessity for further inquiries concerning qualified immunity.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

**CONCLUSION**

For the reasons set forth above, the Court GRANTS defendant Koenig's motion for summary judgment.  Judgment is entered in favor of defendant Koenig and against Plaintiff.  The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated:  March 9, 2026

_____
JON S. TIGAR
United States District Judge